**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN MASCHHOFF, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>POLISHED.COM INC. F/K/A 1847 GOEDEKER INC., DOUGLAS T. MOORE, ROBERT D. BARRY, ALBERT FOUERTI, MARIA JOHNSON, ELLERY W. ROBERTS, THINKEQUITY, A DIVISION OF FORDHAM FINANCIAL MANAGEMENT, INC., AEGIS CAPITAL CORP., and SPARTAN CAPITAL SECURITIES, LLC,<br><br>     Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>CLASS ACTION</u> |

Plaintiff Ryan Maschhoff ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, announcements, United States

Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Polished.com Inc. f/k/a 1847 Goedeker Inc. ("Polished," "Goedeker," or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Polished securities: (1) pursuant and/or traceable to the registration statement and related prospectus (collectively, the "Registration Statement") issued in connection with the Company's 2020 initial public offering (the "IPO" or "Offering"); and/or (2) between July 27, 2020 and August 25, 2022, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") and violations of Sections 10(b) and  20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

2.     On or about July 27, 2020, Defendants held the IPO, issuing approximately 1,111,200 shares to the investing public at $9.00 per share, pursuant to the Registration Statement.

3.     By the commencement of this action, the Company's shares trade significantly below the IPO price. As a result, investors were damaged.

## JURISDICTION AND VENUE

4.     The claims alleged herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2) and 77o) and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

2

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act and 28 U.S.C. §1331 and §27 of the Exchange Act.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and §22(a) of the Securities Act (15 U.S.C. §77v(a)) as a significant portion of the Defendants' actions, and the subsequent damages took place within this District and §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and subsequent damages took place within this District.

7.     Additionally, Defendant Polished's principal executive office is located at 1870 Bath Avenue, Brooklyn, New York 11214.

8.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange. Defendants disseminated the statements alleged to be false and misleading herein into this District, and Defendants solicited purchasers of Polished securities in this District.

## PARTIES

9.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased the Company's securities at artificially inflated prices pursuant to the IPO and during the Class Period and was damaged upon the revelation of the corrective disclosures.

10.     Defendant Polished purports to sell furniture, fitness equipment, plumbing fixtures, televisions, outdoor appliances, and patio furniture, as well as commercial appliances for builder and business clients as a content-driven and technology-enabled shopping destination for appliances, furniture and home goods. Polished purports to have warehouse fulfillment centers in

the Northeast and Midwest, as well as showrooms in Brooklyn, New York, St. Louis, Missouri and Largo, Florida, and to offer one-stop shopping for national and global brands.

11.    On July 20, 2022, the Company changed its name from "1847 Goedeker Inc." to "Polished.com Inc." In connection with the name change, the Company's common stock ceased trading under the ticker symbol "GOED" and began trading under the ticker symbol "POL."

12.    Defendant Polished is a Delaware corporation with principal executive offices located at 1870 Bath Avenue, Brooklyn, New York 11214. Polished's common stock trades in an efficient market on the NYSE American under the trading symbol "POL." Previously, Polished's common stock traded under the ticker symbol "GOED."

13.    Defendant Douglas T. Moore ("Moore") served as the Chief Executive Officer ("CEO") of the Company from August 2019 until September 2021 and as a Director of the Company from April 2020 until September 2021. Defendant Moore was the CEO and a Director of the Company at the time of the IPO and signed or authorized the signing of the Company's Registration Statement.

14.    Defendant Robert D. Barry ("Barry") served as the Chief Financial Officer ("CFO") of the Company since its inception until July 2021. Defendant Barry has served as the Interim CEO of the Company since October 2022. Defendant Barry was the CFO of the Company at the time of the IPO and signed or authorized the signing of the Company's Registration Statement.

15.    Defendant Albert Fouerti ("Fouerti") served as the CEO of the Company from September 2021 until October 2022. Defendant Fouerti has served as a Director of the Company since September 2021.

16.     Defendant Maria Johnson ("Johnson") served as the Company's CFO from July 2021 until October 2022.

17.     The Defendants named in ¶¶ 13-16 are sometimes referred to herein as the "Executive Defendants."

18.     Each of the Executive Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

19.     The Company is liable for the acts of the Executive Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

20.     The scienter of the Executive Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

21.     Defendant Ellery W. Roberts was the Chairman of the Board of Directors of the Company at the time of the IPO and signed or authorized the signing of the Company's Registration Statement.

22.     The Defendant Moore and Defendant Roberts are sometimes referred to herein as the "Director Defendants."

23.     The Executive Defendants and the Director Defendants are sometimes referred to herein as the "Individual Defendants."

24.     Each of the Individual Defendants signed or authorized the signing of the Registration Statement, solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended promotions to meet with and present favorable information to potential Polished investors, all motivated by their own and the Company's financial interests.

25.     Defendant ThinkEquity, a division of Fordham Financial Management, Inc. ("ThinkEquity") is an investment banking firm that acted as an underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. ThinkEquity's address is 17 State St, 41st Floor, New York, NY 10004.

26.     Defendant Aegis Capital Corp. ("Aegis Capital") is an investment banking firm that acted as an underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Aegis Capital's address is 1345 Avenue of the Americas, 27th Floor, New York, NY 10105.

27.     Defendant Spartan Capital Securities, LLC ("Spartan Capital") is an investment banking firm that acted as an underwriter of the Company's IPO, helping to draft and disseminate the IPO documents. Spartan Capital's address is 45 Broadway, 19th Floor, New York, NY 10006.

28.     Defendants named in ¶¶ 25-27 are referred to herein as the "Underwriter Defendants."

29.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared substantial fees from the IPO collectively. The Underwriter Defendants arranged a roadshow prior to the IPO during which they, and representatives from the Company, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b)     The Underwriter Defendants also obtained an agreement from the Company and the Individual Defendants that the Company would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

(c)     Representatives of the Underwriter Defendants also assisted the Company and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of the Company, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, and current corporate information concerning the Company's most up-to-date operational and financial results and prospects.

(d)     In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with the Company's lawyers, management, and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which the Company's securities would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about the Company's would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and the Company's

management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, the Company's existing problems as detailed herein.

30.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

31.     The Company, the Individual Defendants, and the Underwriter Defendants, are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

32.     On April 22, 2020, the Company filed with the SEC a registration statement on Form S-1, which in combination with subsequent amendments on Forms S-1/A and filed pursuant to Rule 424(b)(4), are collectively referred to as the IPO Registration Statement and issued in connection with the IPO.

33.     On August 3, 2020, the Company filed with the SEC the final prospectus for the IPO on Form 424B4, which forms part of the IPO Registration Statement. In the IPO, the Company sold 1,111,200 shares at $9.00 per share.

34.     The IPO Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

35.     The IPO Registration Statement included the following financial information:

| | Period April 6 to December 31, 2019 Successor | Period January 1 to April 5, 2019 Predecessor | | Pro Forma Adjustments | Pro Forma Combined Year Ended December 31, 2019 | Year Ended December 31, 2018 Predecessor | Increase (Decrease) |
|---|---|---|---|---|---|---|---|
| Product sales, net | $ 34,668,112 | $ 12,946,901 | | — | $ 47,615,013 | $ 56,307,960 | $ (8,692,947) |
| Cost of goods sold | 28,596,129 | 11,004,842 | | — | 39,600,971 | 45,409,884 | (5,808,913) |
| Gross profit | 6,071,983 | 1,942,059 | | — | 8,014,042 | 10,898,076 | (2,884,034) |
| Operating expenses | | | | | | | |
| Personnel | 2,909,751 | 913,919 | | — | 3,823,670 | 3,627,883 | 195,787 |
| Advertising | 1,996,507 | 714,276 | | — | 2,710,783 | 2,640,958 | 69,825 |
| Bank and credit card fees | 870,877 | 329,247 | | — | 1,200,124 | 1,369,557 | (169,433) |
| Depreciation and amortization | — | 9,675 | (a) | 271,036 | 280,711 | 39,639 | 241,072 |
| General and administrative | 1,557,260 | 451,214 | (b) | 183,790 | 2,192,264 | 1,330,647 | 861,617 |
| Total operating expenses | 7,334,395 | 2,418,331 | | 454,826 | 10,207,552 | 9,008,684 | 1,198,868 |
| Income (loss) from operations | (1,262,412) | (476,272) | | (454,826) | (2,193,510) | 1,889,392 | (4,082,902) |
| Other income (expense) | | | | | | | |
| Financing costs | — | — | (c) | (520,160) | (520,160) | — | (520,160) |
| Gain on write-down of contingency | — | — | (d) | 32,246 | 32,246 | — | 32,246 |
| Interest expense | — | — | (e) | (683,211) | (683,211) | (149) | (683,062) |
| Change in fair value of warrant | — | — | (f) | 106,900 | 106,900 | — | 106,900 |
| Other income | 15,010 | 31,007 | | — | 46,017 | 116,135 | (70,118) |
| Total other income (expense) | 15,010 | 31,007 | | (1,064,225) | (1,018,208) | 115,986 | (1,134,194) |
| Net income (loss) before income taxes | (1,247,402) | (445,265) | | (1,529,051) | (3,211,718) | 2,005,378 | (5,217,096) |
| Provision before income taxes | — | — | (g) | (698,303) | (698,303) | — | (698,303) |
| Net income (loss) | $ (1,247,402) | $ (445,265) | | $ (830,748) | $ (2,513,415) | $ 2,005,378 | $ (4,518,793) |

\*      \*      \*

| | Year Ended December 31, | | | | Three Months Ended March 31, | |
|---|---|---|---|---|---|---|
| | 2019 Successor | 2019 Predecessor | 2019 Total | 2018 Predecessor | 2020 Successor | 2019 Predecessor |
| Net cash provided by (used in) operating activities | $ (2,706,053) | $ 611,268 | $ (2,094,785) | $ 442,074 | $ 958,356 | $ (2,230) |
| Net cash used in investing activities | (2,200) | — | (2,200) | — | — | — |
| Net cash provided by (used in) financing activities | 2,772,723 | — | 2,772,723 | (713,800) | (775,158) | — |
| Net change in cash | 64,470 | 611,268 | 675,738 | (271,726) | 183,198 | (2,230) |

*          *          *

| | Successor | Predecessor |
|---|---|---|
| | **Three Months Ended March 31, 2020** | **Three Months Ended March 31, 2019** |
| CASH FLOWS FROM OPERATING ACTIVITIES | | |
| Net loss | $ (1,285,120) | $ (458,522) |
| Adjustments to reconcile net income (loss) to net cash provided by (used in) operating activities: | | |
| Depreciation and amortization | 91,841 | 9,674 |
| Amortization of debt discounts | 209,132 | — |
| Changes in operating assets and liabilities: | | |
| Receivables | 290,707 | 1,349,421 |
| Deposits with vendors | — | (73,771) |
| Merchandise inventory | 310,631 | 562,479 |
| Prepaid expenses and other assets | (14,687) | 2,784 |
| Change in operating lease right-of-use assets | 103,145 | |
| Deferred tax assets | (435,000) | |
| Accounts payable and accrued expenses | 520,364 | (414,733) |
| Customer deposits | 1,270,488 | (979,562) |
| Operating lease liabilities | (103,145) | |
| Net cash provided by (used in) operating activities | 958,356 | (2,230) |
| | | |
| CASH FLOWS FROM FINANCING ACTIVITIES | | |
| Repayment on notes payable | (93,750) | — |
| Net payments on lines of credit | (681,408) | — |
| Net cash used in financing activities | (775,158) | — |
| | | |
| NET CHANGE IN CASH | 183,198 | (2,230) |
| CASH, BEGINNING OF PERIOD | 64,470 | 1,525,693 |
| CASH, END OF PERIOD | $ 247,668 | $ 1,523,463 |
| | | |
| SUPPLEMENTAL CASH FLOW INFORMATION | | |
| Cash paid for interest | $ 92,398 | $ — |
| Cash paid for taxes | $ — | $ — |
| | | |
| SUPPLEMENTAL DISCLOSURE OF NON-CASH INFORMATION | | |
| Adjustment to fair value of goodwill based on final purchase price allocation | $ 121,736 | $ — |

\*     \*     \*

| | March 31, 2020 | December 31, 2019 |
|---|---|---|
| | (unaudited) | |
| **ASSETS** | | |
| Current Assets | | |
| Cash and cash equivalents | $ 247,668 | $ 64,470 |
| Receivables | 1,455,912 | 1,862,086 |
| Deposits with vendors | 294,960 | 294,960 |
| Merchandise inventory, net | 1,069,459 | 1,380,090 |
| Other assets | 907,484 | 892,796 |
| Total Current Assets | 3,975,483 | 4,494,402 |
| Property and equipment, net | 174,647 | 185,606 |
| Operating lease right-of-use assets | 1,897,610 | 2,000,755 |
| Goodwill | 5,097,752 | 4,976,016 |
| Intangible assets, net | 1,797,962 | 1,878,844 |
| Deferred tax assets | 1,133,303 | 698,303 |
| Other long-term assets | 45,000 | 45,000 |
| TOTAL ASSETS | $ 14,121,757 | $ 14,278,926 |
| **LIABILITIES AND STOCKHOLDER'S DEFICIT** | | |
| Current Liabilities | | |
| Accounts payable and accrued expenses | $ 2,930,488 | $ 2,465,220 |
| Customer deposits | 5,434,784 | 4,164,296 |
| Advances, related party | 192,666 | 137,500 |
| Lines of credit | 579,355 | 1,250,930 |
| Current portion of notes payable, related parties | 1,261,428 | 1,068,075 |
| Notes payable | 940,123 | 999,200 |
| Convertible notes payable | 710,288 | 584,943 |
| Warrant liability | 122,344 | 122,344 |
| Current portion of operating lease liabilities | 375,885 | 422,520 |
| Total Current Liabilities | 12,457,291 | 11,215,028 |
| Notes payable, related parties, net of current portion | 2,084,567 | 2,232,369 |
| Operating lease liabilities, net of current portion | 1,521,725 | 1,578,235 |
| Contingent note payable | 49,248 | 49,248 |
| TOTAL LIABILITIES | 16,202,831 | 15,074,880 |
| Stockholder's Deficit | | |
| Common stock, $0.001 par value, 5,000 shares authorized, 1,000 shares issued and outstanding as of March 31, 2020 and December 31, 2019 | 1 | 1 |
| Additional paid-in capital | 1,272,195 | 1,272,195 |
| Accumulated deficit | (3,353,270) | (2,068,150) |
| Total Stockholder's Deficit | (2,081,074) | (795,954) |
| TOTAL LIABILITIES AND STOCKHOLDER'S DEFICIT | $ 14,121,757 | $ 14,278,926 |

36.     Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

37.     However, throughout the IPO Registration Statement, the Company neglected to raise any real concerns about its internal controls.

38.     Indeed, the IPO Registration Statement implied that the Company's internal controls, while not affirmatively adequate, faced only mere run-of-the-mill possible concerns, stating in relevant part:

> *We may not complete our analysis of our internal control over financial reporting in a timely manner, or these internal controls may not be determined to be effective.*
>
> We will be required, pursuant to Section 404 of the Sarbanes-Oxley Act, to furnish a report by management on, among other things, the effectiveness of our internal control over financial reporting in the second annual report we file with the SEC. This assessment will need to include disclosure of any material weaknesses identified by our management in our internal control over financial reporting. However, our auditors will not be required to formally attest to the effectiveness of our internal control over financial reporting pursuant to Section 404 until we are no longer a non-accelerated filer or no longer an emerging growth company if we take advantage of the exemptions available to us through the JOBS Act.
>
> We are in the very early stages of the costly and challenging process of compiling the system and process documentation necessary to perform the evaluation needed to comply with Section 404. In this regard, we will need to continue to dedicate internal resources, engage outside consultants and adopt a detailed work plan to assess and document the adequacy of internal control over financial reporting, continue steps to improve control processes as appropriate, validate through testing that controls are functioning as documented and implement a continuous reporting and improvement process for internal control over financial reporting. As we transition to the requirements of reporting as a public company, ***we may need to add additional finance staff***. We ***may not be able to remediate any future material weaknesses***, or to complete our evaluation, testing and any required remediation in a timely fashion. During the evaluation and testing process, ***if we identify one or more material weaknesses in our internal control over financial reporting, we will be unable to assert that our internal controls are effective***. ***If*** we are unable to assert that our internal control over financial reporting is effective, or if our auditors are unable to express an opinion on the effectiveness of our internal controls when they are required to issue such opinion, investors could lose

confidence in the accuracy and completeness of our financial reports, which could harm our stock price.

(Emphasis added.)

39.    The statements contained in ¶¶ 35-38 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, the Registration Statement was false and/or misleading and/or failed to disclose that: (1) the Company would restate certain financials; (2) the Company's internal controls were inadequate; (3) the Company downplayed and obfuscated its internal controls issues; (4) as a result, the Company would engage in an independent investigation; (5) as a result of the investigation, the Company would, among other things, retain independent counsel and consultants, and delay its quarterly filings in violation of NYSE requirements of listing; (6) following the commencement of the investigation, the Company's CEO and CFO would leave the Company; and (7) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

40.    On March 29, 2021, after market hours, the Company filed with the SEC a current report on Form 8-K ("Restatement 8-K") which announced that:

On March 26, 2021, the Board of Directors of 1847 Goedeker Inc. (the "Company"), upon recommendation of the Audit Committee and following discussions with management, determined that *the following previously issued financial statements should no longer be relied upon*:
● *the Company's financial statements for the year ended December 31, 2019*;
● the Company's financial statements for the quarters ended June 30, 2020 and 2019 that were included in the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2020; and
● the Company's financial statements for the quarters ended September 30, 2020 and 2019 that were included in the Company's Quarterly Report on Form 10-Q for the quarter ended September 30, 2020.

*       *       *

*… the Company has decided to restate its financial statements for the year ended December 31, 2019*, for the quarters ended June 30, 2020 and 2019 included in the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2020 and for the quarters ended September 30, 2020 and 2019 included in the Company's Quarterly Report on Form 10-Q for the quarter ended September 30, 2020. *The financial statements noted above should no longer be relied upon. Similarly, related reports, press releases, earnings releases, and investor communications describing the Company's financial statements for these periods should no longer be relied upon.*

The restatement of the Company's financial statements for the year ended December 31, 2019 will be included in the Company's Annual Report on Form 10-K for the year ended December 31, 2020.

(Emphasis added.)

41.    Notably, in the Restatement 8-K, the Company focused blame of the restatement on "the Supreme Court's 2018 decision in South Dakota v. Wayfair, Inc." instead of its ineffective and inadequate internal controls, stating:

The conclusion was based on the discovery that the previously issued financial statements should be revised to reflect the modification of a sales tax liability and for purchase accounting adjustments as follows:

(1)    *Like many other companies that sell their products almost exclusively online, the Company concluded that it should accrue a liability for potential sales taxes that might be payable to the states in which it sells its products as a result of the Supreme Court's 2018 decision in South Dakota v. Wayfair, Inc., which provided that states may require remote sellers to collect sales tax under certain circumstances.* Accordingly, the Company's financial statements for the year ended December 31, 2019 will be revised to accrue a liability of $2,910,200, representing a potential liability for sales taxes and penalties of $2,808,000 and interest expense of $102,200.

(2)    The Company determined that it should adjust the fair value of the ownership interests in the Company's prior parent company, 1847 Goedeker Holdco Inc., that were transferred to the seller and the value of liabilities assumed in its April 5, 2019 acquisition of all of the assets of Goedeker Television Co., resulting in a $372,063 reduction in goodwill, a $192,542 reduction in additional paid in capital, and $179,521 reduction in liabilities assumed for the year ended December 31, 2019, which was recognized as a general and administrative expense.

14

(Emphasis added.)

42.     On this news, the Company's stock price fell $0.37 per share, or 4%, to close at $8.63 per share on March 30, 2021.

43.     On May 3, 2021, the Company filed with the SEC a registration statement on Form S-1, which in combination with subsequent amendments on Forms S-1/A and filed pursuant to Rule 424(b)(4), are collectively referred to as the SPO Registration Statement and issued in connection with the SPO. On June 1, 2021, the Company filed with the SEC the final prospectus for the SPO on Form 424B4, which forms part of the SPO Registration Statement. In the SPO, the Company sold 91,111,111 shares at $2.25 per share.

44.     The SPO Registration Statement implied that the Company's internal controls, while not affirmatively adequate, faced only mere run-of-the-mill possible concerns, stating in relevant part:

**The integration of Appliances Connection with Goedeker may not be as successful as anticipated.**

The proposed acquisition of Appliances Connection, a company that is significantly larger than Goedeker, involves numerous operational, strategic, financial, accounting, legal, tax and other risks; potential liabilities associated with the acquired business; and ***uncertainties related to design, operation and integration of Appliances Connection's internal control over financial reporting***. Difficulties in integrating Appliances Connection with Goedeker may result in the combined company performing differently than expected, in operational challenges or in the failure to realize anticipated expense-related efficiencies. Goedeker's and Appliances Connection's existing businesses could also be negatively impacted by the proposed acquisition.

*       *       *

*We may not complete our analysis of our internal control over financial reporting in a timely manner, or these internal controls may not be determined to be effective.*

We will be required, pursuant to Section 404 of the Sarbanes-Oxley Act, to furnish a report by management on, among other things, the effectiveness of our internal control over financial reporting in the second annual report we file with the SEC.

This assessment will need to include disclosure of any material weaknesses identified by our management in our internal control over financial reporting. However, our auditors will not be required to formally attest to the effectiveness of our internal control over financial reporting pursuant to Section 404 until we are no longer a non-accelerated filer or no longer an emerging growth company if we take advantage of the exemptions available to us through the JOBS Act.

We are in the very early stages of the costly and challenging process of compiling the system and process documentation necessary to perform the evaluation needed to comply with Section 404. In this regard, *we will need to continue to dedicate internal resources, engage outside consultants and adopt a detailed work plan to assess and document the adequacy of internal control over financial reporting*, continue steps to improve control processes as appropriate, validate through testing that controls are functioning as documented and implement a continuous reporting and improvement process for internal control over financial reporting. As we transition to the requirements of reporting as a public company, we may need to add additional finance staff. *We may not be able to remediate any future material weaknesses*, or to complete our evaluation, testing and any required remediation in a timely fashion. During the evaluation and testing process, *if we identify one or more material weaknesses in our internal control over financial reporting, we will be unable to assert that our internal controls are effective*. *If* we are unable to assert that our internal control over financial reporting is effective, or if our auditors are unable to express an opinion on the effectiveness of our internal controls when they are required to issue such opinion, investors could lose confidence in the accuracy and completeness of our financial reports, which could harm our stock price.

(Emphasis added.)

45.     On August 12, 2021, the Company filed with the SEC its periodic report on Form 10-Q for the quarter ended June 30, 2021 (the "2Q21 Report") which was signed by Defendants Moore and Barry. Attached to the 2Q21 Report were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Moore and Barry attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

46.     The 2Q21 Report did not reveal the issues with the Company's internal controls and instead stated the following, in pertinent part, implying that the Company's internal controls,

while not affirmatively adequate, faced only mere run-of-the-mill possible concerns, stating in

relevant part:

**Changes in Internal Control Over Financial Reporting**

There were no changes in the Company's internal control over financial reporting or in any other factors that could significantly affect these controls during the three months ended June 30, 2021 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

47.     On November 15, 2021, the Company filed with the SEC its periodic report on

Form 10-Q for the quarter ended September 30, 2021 (the "3Q21 Report") which was signed by

Defendants Moore and Barry. Attached to the 3Q21 Report were certifications pursuant to SOX

signed by Defendants Moore and Barry attesting to the accuracy of financial reporting, the

disclosure of any material changes to the Company's internal control over financial reporting and

the disclosure of all fraud.

48.     The 3Q21 Report did not reveal the issues with the Company's internal controls

and instead stated the following, in pertinent part, implying that the Company's internal controls,

while not affirmatively adequate, faced only mere run-of-the-mill possible concerns, stating in

relevant part:

**Changes in Internal Control Over Financial Reporting**

During the three months ended September 30, 2021, the Company hired a new Chief Executive Officer and a new Chief Financial Officer.

There were no other changes in the Company's internal control over financial reporting or in any other factors that could significantly affect these controls during the three months ended September 30, 2021 that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting.

49.     On March 31, 2022, the Company filed with the SEC its annual report on Form 10-

K for the year ended December 31, 2021 (the "2021 Annual Report") which was signed by

Defendants Fouerti and Johnson. Attached to the 2021 Annual Report were certifications pursuant to SOX signed by Defendants Fouerti and Johnson attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

50.    The 2021 Annual Report stated the following, in pertinent part, acknowledging that the Company had "a material weakness" in internal controls while providing purported remediation plans and actions:

> *We have identified a material weakness in our internal control over financial reporting and may identify additional material weaknesses in the future or otherwise fail to maintain an effective system of internal controls, which may result in material misstatements of our financial statements or cause us to fail to meet our reporting obligations or fail to prevent fraud, which would harm our business and could negatively impact the price of our common stock.*

> Effective internal control over financial reporting is necessary for us to provide reliable financial reports and prevent or detect fraud. If we cannot provide reliable financial reports or prevent fraud, our reputation and operating results would be harmed. In connection with management's evaluation of the effectiveness of our internal control over financial reporting and the audit of our consolidated financial statements for the year ended December 31, 2021, *we identified a material weakness in our internal control over financial reporting*. A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of our annual or interim financial statements will not be prevented or detected on a timely basis.

> *The following material weaknesses, which were discovered to be material during 2021, were present at December 31, 2021: lack of structure and responsibility, insufficient number of qualified resources and inadequate oversight and accountability over the performance of controls; ineffective assessment and identification of changes in risk impacting internal control over financial reporting; inadequate selection and development of effective control activities, general controls over technology and effective policies and procedures; and ineffective evaluation and determination as to whether the components of internal control were present and functioning*. The material weaknesses described or any newly identified material weakness *could* result in a material misstatement of our annual or interim consolidated financial statements that would not be prevented or detected. *To remediate the material weaknesses identified above, we are implementing or plan to implement the following measures: enhancing*

*reporting structure and increasing the number of qualified resources in roles over internal control over financial reporting; establishing formal risk assessment procedures to identify and monitor changes in the organization that could have an impact on internal control over financial reporting; and developing and documenting policies and procedures, including related business process and technology controls, assessing their effectiveness and establishing a program for continuous assessment of their effectiveness*. *See also* Item 9A "Controls and Procedures— Management's Annual Report on Internal Control Over Financial Reporting" for more information.

In addition, our independent registered public accounting firm has not performed an evaluation of our internal control over financial reporting in accordance with the provisions of the Sarbanes-Oxley Act because no such evaluation has been required. Had our independent registered public accounting firm performed an evaluation of our internal control over financial reporting in accordance with the provisions of the Sarbanes-Oxley Act, additional material weaknesses **may** have been identified. If we are unable to successfully remediate our existing or any future material weakness in our internal control over financial reporting, or identify any additional material weaknesses that may exist, the accuracy and timing of our financial reporting may be adversely affected, we **may** be unable to maintain compliance with securities law requirements regarding timely filing of periodic reports in addition to applicable stock exchange listing requirements, we **may** be unable to prevent fraud, our business could be harmed, investors **may** lose confidence in our financial reporting and the trading price of our common stock **may** decline as a result. Additionally, our reporting obligations as a public company will place a significant strain on our management, operational and financial resources and systems for the foreseeable future and may cause us to fail to timely achieve and maintain the adequacy of our internal control over financial reporting. The requirements of being a public company, including compliance with the reporting requirements of the Exchange Act, and the requirements of the Sarbanes-Oxley Act, may strain our resources, increase our costs and distract management, and we may be unable to comply with these requirements in a timely or cost-effective manner.

\*       \*       \*

Management, with the participation of our Chief Executive Officer and Chief Financial Officer, has conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2021, based on the framework set forth in Internal Control-Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). Based on this assessment, management has concluded that the Company **did not maintain** effective internal control over financial reporting as of December 31, 2021, due to the material weaknesses described below.

**Material Weaknesses in Internal Control over Financial Reporting**

*Management has determined that the Company's ineffective internal control over financial reporting and resulting material weaknesses, stem primarily from management's inability to maintain appropriately designed controls, which impacts the control environment, risk assessment procedures and ability to detect or prevent material misstatements to the financial statements*. The material weaknesses were attributed to:

● Lack of structure and responsibility, insufficient number of qualified resources and inadequate oversight and accountability over the performance of controls;
● Ineffective assessment and identification of changes in risk impacting internal control over financial reporting;
● Inadequate selection and development of effective control activities, general controls over technology and effective policies and procedures; and
● Ineffective evaluation and determination as to whether the components of internal control were present and functioning.

**Management's Remediation Plans**

*Management is actively engaged in the implementation of remediation plans to address the controls contributing to the material weaknesses*. The Company's remediation actions include, but are not limited to, the following:

● Enhance reporting structure and increase the number of qualified resources in roles over internal control over financial reporting;
● Establish formal risk assessment procedures to identify and monitor changes in the organization that could have an impact on internal control over financial reporting; and
● Develop and document policies and procedures, including related business process and technology controls, assess their effectiveness and establish a program for continuous assessment of their effectiveness.

… Management excluded from its assessment of the effectiveness of the Company's internal control over financial reporting the Appliances Connection Acquisition (as further described in Note 10 to the consolidated financial statements) because the acquisition was completed in June 2021. Appliances Connection represented approximately 32% of the Company's total assets as of December 31, 2021, and revenue from Appliances Connection represented approximately 87% of the Company's total revenue for the year ended December 31, 2021.

… *Notwithstanding the identified material weaknesses, management believes the consolidated financial statements included in this Form 10-K fairly present, in all material respects, our results of operations and cash flows for year ended*

*December 31, 2021 and our financial condition as of such date, in accordance with GAAP.*

**Changes in Internal Control Over Financial Reporting**

Except as set forth above, there were no changes in our internal control over financial reporting during the quarter ended December 31, 2021 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

(Emphasis added.)

51.    However, also on March 31, 2022, the Company issued a press release entitled "CORRECTING and REPLACING 1847 Goedeker Inc. Announces Fourth Quarter and Full Year Fiscal 2021 Results" which was issued to "clarify" the earlier press release issued in connection with the 2021 Annual Report or really to obfuscate the Company's newly noted material weaknesses in its internal controls, stating the following, in pertinent part:

Please replace the release with the following corrected version that has been *amended and restated to clarify that our 2022 guidance is based on a comparison to 2021 pro forma results*.

(Emphasis added.)

52.    On May 16, 2022, the Company filed with the SEC its periodic report on Form 10-Q for the period ended March 31, 2022 (the "1Q22 Report") which was signed by Defendants Fouerti and Johnson. Attached to the 1Q22 Report were SOX certifications signed by Defendants Fouerti and Johnson attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

53.    The 1Q22 Report stated the following, in pertinent part, acknowledging that the Company had "a material weakness" in internal controls while providing purported remediation plans and actions:

**Material Weaknesses in Internal Control over Financial Reporting**

Management has determined that the Company's ineffective internal control over financial reporting and resulting material weaknesses, ***stem primarily from management's inability to maintain appropriately designed controls***, which impacts the control environment, risk assessment procedures and ability to detect or prevent material misstatements to the financial statements. The material weaknesses were attributed to:

●     Lack of structure and responsibility, insufficient number of qualified resources and inadequate oversight and accountability over the performance of controls;

●     Ineffective assessment and identification of changes in risk impacting internal control over financial reporting;

●     Inadequate selection and development of effective control activities, general controls over technology and effective policies and procedures; and

●     Ineffective evaluation and determination as to whether the components of internal control were present and functioning.

**Management's Remediation Plans**

***Management is actively engaged in the implementation of remediation plans to address the controls contributing to the material weaknesses. During the three months ended March 31, 2022, the Company has taken, and continues to take, the following remediation actions***:

●     Enhance reporting structure and increase the number of qualified resources in roles over internal control over financial reporting;

●     Establish formal risk assessment procedures to identify and monitor changes in the organization that could have an impact on internal control over financial reporting; and

●     Develop and document policies and procedures, including related business process and technology controls, assess their effectiveness and establish a program for continuous assessment of their effectiveness.

We believe these measures will remediate the control deficiencies, but management is assessing the need for any additional steps to remediate the underlying causes that give rise to these material weaknesses. The material weaknesses will not be considered remediated until the applicable controls operate for a sufficient period of time and management has concluded, through testing, that these controls are operating effectively. There is no assurance that additional remediation steps will not be necessary.

**Changes in Internal Control Over Financial Reporting**

Except as set forth above, there were no changes in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange

Act) during the quarter ended March 31, 2022 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

(Emphasis added.)

54.     The statements contained in ¶¶ 35-38 and 40-53 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company's internal controls were inadequate; (2) the Company downplayed and obfuscated its internal controls issues; (3) the Company did not properly construct or remediate its inadequate and ineffective internal controls; (4) contrary to the Company's statements, the Company was not remediating its internal controls; (5) as a result, the Company would engage in an independent investigation; (6) as a result of the investigation, the Company would, among other things, retain independent counsel and consultants, and delay its quarterly filings in violation of NYSE requirements of listing; (7) following the commencement of the investigation, the Company's CEO and CFO would leave the Company; and (8) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

55.     Then on August 15, 2022, after market hours, Polished notified investors that it would not timely file its "quarterly report on Form 10-Q for the period ended June 30, 2022 ('Second Quarter 10-Q') within the prescribed time period" because the Company required additional time to complete a newly announced investigation. To announce these issues, Polished filed with the SEC a Form 12b-25 and a current report on Form 8-K, and also issued a press release.

56.     The Form 12b-25 stated the following, in pertinent part, regarding the newly announced investigation:

> *The Audit Committee of the Company's Board of Directors ("Audit Committee") recently began an independent investigation regarding certain allegations made by certain former employees related to the Company's business operations. The investigation is ongoing, and the Audit Committee continues to work diligently with independent counsel and consultants* to complete the investigation as soon as possible. The Company cannot predict the duration of the investigation, eventual scope, its outcome, or its impact on the Company's financial results. As a result of the additional time required to complete the investigation, the Company has not finalized its financial statements for the period ended June 30, 2022. The Company expects that it will finalize its financial statements and file the related Second Quarter 10-Q as soon as practicable after the conclusion of the investigation, but *does not anticipate that it will be in a position to file the Second Quarter 10-Q on or before the fifth calendar date following the required filing date as prescribed in Rule 12b-25*.

(Emphasis added.)

57.     The press release issued August 15, 2022, is entitled "Polished.com Provides Second Quarter 2022 Financial and Operational Update" and stated the following, in pertinent part, regarding the Company's inability to timely file its quarterly report and the newly announced investigation:

**Other Corporate Developments**

The Company also announced that it has filed a Form 12b-25 with the U.S. Securities and Exchange Commission ("SEC") in connection with *its inability to timely file the Form 10-Q for its second quarter of fiscal year 2022* ended June 30, 2022. As noted in the Form 12b-25, *the Audit Committee of the Company's Board of Directors, with the assistance of independent legal counsel and consultants, has commenced an internal investigation* regarding certain allegations made by certain former employees related to the Company's business operations. *The Company expects to complete the investigation in the coming months.* As a result of the additional time required to complete the investigation, the process of finalizing financial statements for the second quarter of fiscal year 2022 could not be completed on a timely basis. The Company intends to release its second quarter financial results as soon as reasonably practicable.

**Earnings Release and Investor Conference Call**

The Company is delaying its second quarter earnings release and conference call to allow additional time to complete the Form 10-Q for its second quarter of fiscal year 2022 ended June 30, 2022.

(Emphasis added.)

58.     On this news, Polished's stock price fell 35% to close at $0.97 per share on August 16, 2022, on unusually heavy trading volume, damaging investors.

59.     On August 25, 2022, after market hours, the Company's current report on Form 8-K was accepted by the SEC which announced that the Company was no longer in compliance with NYSE American rules due to the Company failing to timely file its quarterly report, received notice from the NYSE that it was no longer in compliance with NYSE American rules, and that the Company was automatically given an extension until February 23, 2023 to regain compliance. The Company also noted that the NYSE may grant a further 6-month extension to regain compliance.

60.     Also on August 25, 2022, after market hours, the Company issued a press release entitled "Polished.com Provides Corporate Updates; Engages Leading Strategic Consulting Firm and Receives New York Stock Exchange Notice Regarding Late Form 10-Q Filing" which announced the NYSE notice and also announced that the Company had engaged "a leading strategic consulting firm with retail and ecommerce operations expertise to augment its existing management, identify opportunities to accelerate long-term profitable growth and, separately, to potentially expedite the Audit Committee of the Board of Directors' ongoing investigation."

61.     On this news, the Company's stock price fell 7% to close at $0.74 per share on August 26, 2022, further damaging investors.

62.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

63.     On October 18, 2022, the Company issued a press release entitled "Polished.com Announces Management Transition" which announced that Defendants Fouerti and Johnson and also the Company's Chief Operating Officer, Elie Fouerti, resigned from their roles at the Company effective October 14, 2022.

64.     Since the IPO, and as a result of the disclosure of material adverse facts omitted from the Company's Registration Statement, Polished's share price has fallen significantly below its IPO price, damaging Plaintiff and Class members. On October 26, 2022, the Company's share price closed at $0.55 per share, representing a 93% decline from the IPO price of $9.00 per share.

65.     Additionally, due to the materially deficient Registration Statement, Defendants have also violated their independent, affirmative duty to provide adequate disclosures about adverse conditions, risk and uncertainties. Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii) requires that the materials incorporated in a registration statement disclose all "known trends or uncertainties" reasonably expected to have a material unfavorable impact on the Company's operations.

66.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

67.     Plaintiff brings this action as a class action on behalf of all those who purchased the Company's securities pursuant and/or traceable to the Registration Statement and/or during

the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

68.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

69.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

70.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

71.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the federal securities laws;

(b)     whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and to what extent the members of the Class have sustained damages and the proper measure of damages;

(c)      whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(d)      whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(e)      whether Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(f)      whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(g)      whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(h)      to what extent the members of the Class have sustained damages and the proper measure of damages.

72.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
### Violation of Section 11 of the Securities Act
### Against All Defendants

73.      Plaintiff incorporates all the foregoing by reference.

74.      This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

75.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

76.     Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

77.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

78.     By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated §11 of the Securities Act.

79.     Plaintiff acquired the Company's securities pursuant to the Registration Statement.

80.     At the time of their purchases of Polished securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

81.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the IPO that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the IPO. It is therefore timely.

**COUNT II**
**Violation of Section 12(a)(2) of the Securities Act**
**Against the All Defendants**

82.     Plaintiff incorporates all the foregoing by reference.

83.     By means of the defective Registration Statement, Defendants promoted, solicited, and sold Polished securities to Plaintiff and other members of the Class.

84.     The Registration Statement for the IPO contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased the Company's securities pursuant to the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Registration Statement as set forth above.

85.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Registration Statement at the time Plaintiff acquired Polished securities.

86.     By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Polished securities pursuant to the Registration Statement sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the securities issued pursuant to the Registration Statement have the right to rescind and recover the consideration paid for their shares, and hereby tender their securities to Defendants sued herein. Class members who have sold their securities seek damages to the extent permitted by law.

87.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the IPO that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the IPO. It is therefore timely.

## COUNT III

### Violation of Section 15 of the Securities Act
### Against the Individual Defendants

88.     Plaintiff incorporates all the foregoing by reference.

89.     This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against all Defendants except the Underwriter Defendants.

90.     The Individual Defendants were controlling persons of Polished by virtue of their positions as directors and/or senior officers of the Company. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of the Company. The Company controlled the Individual Defendants and all of Polished employees.

91.     The Company and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

92.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the IPO that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the IPO. It is therefore timely.

## COUNT IV

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against the Company and the Executive Defendants

93.     Plaintiff incorporates all the foregoing by reference.

94.     This Count is asserted against the Company and the Executive Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

31

95.    During the Class Period, Defendants Polished and the Executive Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

96.    Defendants Polished and the Executive Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

97.    Defendants Polished and the Executive Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

98.     The Executive Defendants, who are senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

99.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Executive Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Executive Defendants' false and misleading statements.

100.    Had Plaintiff and the other members of the Class been aware that the market price of Polished securities had been artificially and falsely inflated by the Company's and the Executive Defendants' misleading statements and by the material adverse information which the Company and the Executive Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

101.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

102.    By reason of the foregoing, the Company and the Executive Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to

the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT V
### Violation of Section 20(a) of The Exchange Act
### Against the Executive Defendants

103.   Plaintiff incorporates all the foregoing by reference.

104.   During the Class Period, the Executive Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

105.   As officers and/or directors of a publicly owned company, the Executive Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

106.   Because of their positions of control and authority as senior officers, the Executive Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Executive Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Executive Defendants, therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

107.   The Executive Defendants, therefore, acted as controlling persons of the Company. By reason of their senior management positions and/or directors of the Company, they had the

power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. The Executive Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

108.   By reason of the above conduct, the Executive Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 31, 2022       Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

<u>/s/Phillip Kim</u>
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*