UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN MASCHHOFF, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>POLISHED.COM INC. F/K/A 1847 GOEDEKER INC., DOUGLAS T. MOORE, ROBERT D. BARRY, ALBERT FOUERTI, MARIA JOHNSON, ELLERY W. ROBERTS, THINKEQUITY, A DIVISION OF FORDHAM FINANCIAL MANAGEMENT, INC., AEGIS CAPITAL CORP., and SPARTAN CAPITAL SECURITIES, LLC,<br><br>    Defendants. | Case No.  1:22-cv-06606-NGG-VMS<br><br>Date of Service:  December 30, 2022 |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ARI GOLD FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ............................................................................................................................ 7

I.      GOLD SHOULD BE APPOINTED LEAD PLAINTIFF ................................................. 7

        A.      Gold Is Willing to Serve as Class Representative ................................................. 8

        B.      Gold Has the "Largest Financial Interest" in the Action ....................................... 9

        C.      Gold Otherwise Satisfies the Requirements of Rule 23 ....................................... 10

        D.      Gold Will Fairly and Adequately Represent the Interests of the Class and Is Not
                Subject to Unique Defenses .................................................................................... 13

II.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ......... 13

CONCLUSION........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
   2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)..............................................................................10

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
   141 F.R.D. 229 (S.D.N.Y. 1992) ..............................................................................................11

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
   2018 WL 3093965 (S.D.N.Y. June 21, 2018) ............................................................................9

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
   2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)...........................................................................12

*Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A,
   1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ..............................................................................11

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ..............................................................................................12

*Gluck v. CellStar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ..........................................................................................10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)........................................................................................................9

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
   2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...............................................................................9

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)......................................................................................................11

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) .................................................................................................13

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .......................................................................................9, 11

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
   2008 WL 2811358 (S.D.N.Y. July 7, 2008) ............................................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................................10

ii

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 113 (S.D.N.Y. 2010) ...............................................................................11

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................10

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ..............................................................................13

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
   1997 WL 461036 (N.D. Ill. Aug. 6, 1997) .................................................................9

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
   2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017).............................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...............................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)......................................................................13

## Statutes

15 U.S.C. § 77z-1............................................................................................. *passim*

15 U.S.C. § 78u-4 ............................................................................................ *passim*

Private Securities Litigation Reform Act of 1995 .............................................. *passim*

## Rules

Fed. R. Civ. P. 23............................................................................................. *passim*

Ari Gold ("Gold") respectfully submits this memorandum of law in support of his motion, pursuant to Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3), and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing Gold as Lead Plaintiff on behalf of persons or entities who purchased or otherwise acquired publicly traded Polished.com Inc. f/k/a 1847 Goedeker Inc. ("Polished," "Goedeker," or the "Company") securities (i) pursuant and/or traceable to the registration statement and related prospectus (collectively, the "Registration Statement") issued in connection with the Company's 2020 initial public offering (the "IPO" or "Offering"), and/or (ii) between July 27, 2020 and August 25, 2022, inclusive (the "Class Period") (the "Class"); and (2) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

PRELIMINARY STATEMENT

The Complaint in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") disseminated a materially false or misleading registration statement to investors in connection with the IPO in violation of the Securities Act, as well as defrauded investors in violation of the Exchange Act. Polished investors, including Gold, incurred significant losses following the disclosure of the Company's alleged wrongful conduct, which caused Polished's share price to fall sharply, damaging Gold and other Polished investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I). Pursuant and/or traceable to the Registration Statement

1

issued in connection with the IPO and/or during the Class Period, Gold purchased or otherwise acquired 107,318 Polished shares, expended $981,918 on his purchases, retained 97,318 of his Polished shares, and, as a result of the disclosure of the Company's alleged wrongful conduct, incurred losses of approximately $901,231 in connection with his transactions in Polished securities. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A. Accordingly, Gold believes that he has the largest financial interest in the relief sought in the Action.

Beyond his considerable financial interest, Gold also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Gold has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Gold respectfully requests that the Court enter an order appointing him as Lead Plaintiff for the Class and approving his selection of Pomerantz as Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the Complaint in the Action, Polished purports to sell furniture, fitness equipment, plumbing fixtures, televisions, outdoor appliances, and patio furniture, as well as commercial appliances for builder and business clients as a content-driven and technology-enabled shopping destination for appliances, furniture and home goods. Polished purports to

2

have warehouse fulfillment centers in the Northeast and Midwest, as well as showrooms in Brooklyn, New York, St. Louis, Missouri and Largo, Florida, and to offer one-stop shopping for national and global brands.

On April 22, 2020, the Company filed with the U.S. Securities and Exchange Commission ("SEC") a registration statement on Form S-1, which in combination with subsequent amendments on Forms S-1/A and filed pursuant to Rule 424(b)(4), are collectively referred to as the Registration Statement issued in connection with the IPO.

On August 3, 2020, the Company filed with the SEC the final prospectus for the IPO on Form 424B4, which forms part of the Registration Statement.  In the IPO, the Company sold 1,111,200 shares at $9.00 per share.

The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.  In addition, Defendants' statements throughout the Class Period were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them.  Specifically, the Registration Statement and Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company would restate certain financials; (2) the Company's internal controls were inadequate; (3) the Company downplayed and obfuscated its internal controls issues; (4) the Company did not properly construct or remediate its inadequate and ineffective internal controls; (5) contrary to the Company's statements, the Company was not remediating its internal controls; (6) as a result, the Company would engage in an independent investigation; (7) as a result of the

investigation, the Company would, among other things, retain independent counsel and consultants, and delay its quarterly filings in violation of the New York Stock Exchange ("NYSE") requirements of listing; (8) following the commencement of the investigation, the Company's Chief Executive Officer ("CEO") and Chief Financial Officer ("CFO") would leave the Company; and (9) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

On March 29, 2021, after market hours, the Company filed with the SEC a current report on Form 8-K ("Restatement 8-K") which announced, *inter alia*, that certain of the Company's "previously issued financial statements should no longer be relied upon", including "the Company's financial statements for the year ended December 31, 2019"; that "the Company has decided to restate its financial statements for" the affected periods; and that "related reports, press releases, earnings releases, and investor communications describing the Company's financial statements for these periods should no longer be relied upon."

Notably, in the Restatement 8-K, the Company focused blame of the restatement on "the Supreme Court's 2018 decision in South Dakota v. Wayfair, Inc." instead of its ineffective and inadequate internal controls.

On this news, the Company's stock price fell $0.37 per share, or 4%, to close at $8.63 per share on March 30, 2021.

On July 20, 2022, the Company changed its name from "1847 Goedeker Inc." to "Polished.com Inc." In connection with the name change, the Company's common stock ceased trading under the ticker symbol "GOED" and began trading under the ticker symbol "POL."

On August 15, 2022, after market hours, Polished notified investors that it would not timely file its "quarterly report on Form 10-Q for the period ended June 30, 2022 ('Second

4

Quarter 10-Q') within the prescribed time period" because the Company required additional time to complete a newly announced investigation. To announce these issues, Polished filed with the SEC a Form 12b-25 and a current report on Form 8-K, and also issued a press release.

The Form 12b-25 stated the following, in pertinent part, regarding the newly announced investigation:

> ***The Audit Committee of the Company's Board of Directors ("Audit Committee") recently began an independent investigation regarding certain allegations made by certain former employees related to the Company's business operations. The investigation is ongoing, and the Audit Committee continues to work diligently with independent counsel and consultants*** to complete the investigation as soon as possible. The Company cannot predict the duration of the investigation, eventual scope, its outcome, or its impact on the Company's financial results. As a result of the additional time required to complete the investigation, the Company has not finalized its financial statements for the period ended June 30, 2022. The Company expects that it will finalize its financial statements and file the related Second Quarter 10-Q as soon as practicable after the conclusion of the investigation, but ***does not anticipate that it will be in a position to file the Second Quarter 10-Q on or before the fifth calendar date following the required filing date as prescribed in Rule 12b-25***.

(Emphases added.)

The press release issued on August 15, 2022 is entitled "Polished.com Provides Second Quarter 2022 Financial and Operational Update" and stated the following, in pertinent part, regarding the Company's inability to timely file its quarterly report and the newly announced investigation:

> **Other Corporate Developments**
>
> The Company also announced that it has filed a Form 12b-25 with the [SEC] in connection with ***its inability to timely file the Form 10-Q for its second quarter of fiscal year 2022*** ended June 30, 2022. As noted in the Form 12b-25, ***the Audit Committee of the Company's Board of Directors, with the assistance of independent legal counsel and consultants, has commenced an internal investigation*** regarding certain allegations made by certain former employees related to the Company's business operations. ***The Company expects to complete the investigation in the coming months.*** As a result of the additional time required to complete the investigation, the process of finalizing financial

5

statements for the second quarter of fiscal year 2022 could not be completed on a timely basis. The Company intends to release its second quarter financial results as soon as reasonably practicable.

**Earnings Release and Investor Conference Call**

The Company is delaying its second quarter earnings release and conference call to allow additional time to complete the Form 10-Q for its second quarter of fiscal year 2022 ended June 30, 2022.

(Emphases added.)

On this news, Polished's stock price fell 35% to close at $0.97 per share on August 16, 2022, on unusually heavy trading volume, damaging investors.

On August 25, 2022, after market hours, the Company's current report on Form 8-K was accepted by the SEC which announced that the Company was no longer in compliance with NYSE American rules due to the Company failing to timely file its quarterly report, received notice from the NYSE that it was no longer in compliance with NYSE American rules, and that the Company was automatically given an extension until February 23, 2023 to regain compliance. The Company also noted that the NYSE may grant a further 6-month extension to regain compliance.

Also on August 25, 2022, after market hours, the Company issued a press release entitled "Polished.com Provides Corporate Updates; Engages Leading Strategic Consulting Firm and Receives New York Stock Exchange Notice Regarding Late Form 10-Q Filing" which announced the NYSE notice and also announced that the Company had engaged "a leading strategic consulting firm with retail and ecommerce operations expertise to augment its existing management, identify opportunities to accelerate long-term profitable growth and, separately, to potentially expedite the Audit Committee of the Board of Directors' ongoing investigation."

6

On this news, the Company's stock price fell 7% to close at $0.74 per share on August 26, 2022, further damaging investors.

On October 18, 2022, the Company issued a press release entitled "Polished.com Announces Management Transition" which announced that Defendants Albert Fouerti and Maria Johnson—*i.e.*, the Company's then-CEO and CFO, respectively—and also the Company's Chief Operating Officer, Elie Fouerti, resigned from their roles at the Company effective October 14, 2022.

Since the IPO, and as a result of the disclosure of material adverse facts omitted from the Company's Registration Statement, Polished's share price has fallen significantly below its IPO price, damaging Class members.  On October 26, 2022, the Company's share price closed at $0.55 per share, representing a 93% decline from the IPO price of $9.00 per share.

As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's securities, the plaintiff in the Action and other Class members have suffered significant losses and damages.

ARGUMENT

I.      GOLD SHOULD BE APPOINTED LEAD PLAINTIFF

Gold should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in the Action to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice.  *See* 15 U.S.C. §§

7

77z-1(a)(3)(A)(i), 78u-4(a)(3)(A)(i).   Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate.  *See id.* §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff.    *Id.* §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i).    The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

As set forth below, Gold satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A.    Gold Is Willing to Serve as Class Representative

On October 31, 2022, counsel for the plaintiff in the Action caused the statutorily required Notice of the Action to be published over *PR Newswire* pursuant to Sections 27(a)(3)(A)(i) and  21D(a)(3)(A)(i) of the PSLRA, which announced that this Action had been filed against Polished and other Defendants, and which advised investors in Polished securities that they had until December 30, 2022—*i.e.*, 60 days from the date of the Notice's publication— to file a motion to be appointed as lead plaintiff.  *See* Lieberman Decl., Ex. B.

8

Gold has filed the instant motion pursuant to the Notice and has attached a sworn Certification executed by him attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Gold satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.      Gold Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii). To the best of his knowledge, Gold has the largest financial interest of any Polished investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[1] these *Lax* factors have been adopted and routinely applied by courts in this judicial district. *See, e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

Pursuant and/or traceable to the Registration Statement issued in connection with the IPO and/or during the Class Period, Gold: (1) purchased 107,318 Polished shares; (2) expended

---

[1] *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

9

$981,918 on his purchases of Polished securities; (3) retained 97,318 of his Polished shares; and (4) as a result of the disclosure of the Company's alleged wrongful conduct in the Action, incurred losses of approximately $901,231 in connection with his transactions in Polished securities. *See* Lieberman Decl., Ex. A. To the extent that Gold possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb), 78u-4(a)(3)(B)(iii)(I)(bb).

      C.      Gold Otherwise Satisfies the Requirements of Rule 23

Sections 27(a)(3)(B)(iii)(I)(cc) and 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provide that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that a lead plaintiff satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018) ); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v.*

10

*CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997), and *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *Olsten*, 3 F. Supp. 2d at 296.  Here, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Gold.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Gold's claims are typical of those of the Class.  Gold alleges, like all Class members, that Defendants violated the federal securities laws by making false or misleading statements of material facts and/or by omitting to disclose material facts concerning Polished.  Gold, like other Class members, purchased or otherwise acquired Polished securities pursuant and/or traceable to the Registration Statement issued in connection with the IPO and/or during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Polished's share price downward.  These shared claims, which are based on the same legal

11

theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Gold has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submits his choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v). In addition to Pomerantz, Gold is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this litigation. There is no evidence of antagonism or conflict between Gold's interests and those of the Class. Moreover, Gold has submitted a signed Certification declaring his commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C), and his significant losses demonstrate that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating his adequacy, Gold has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. D.

      **D.**        **Gold Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses**

The presumption in favor of appointing Gold as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

      (aa)    will not fairly and adequately protect the interests of the class; or

      (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).

Gold's ability and desire to fairly and adequately represent the Class has been discussed above. Gold is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class. Accordingly, Gold should be appointed Lead Plaintiff for the Class.

**II.**      **LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See id.* §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." *Id.* §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Gold has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted

numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Gold's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving Gold's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Gold respectfully requests that the Court issue an Order: (1) appointing Gold as Lead Plaintiff for the Class; and (2) approving Gold's selection of Pomerantz as Lead Counsel for the Class.

Dated:  December 30, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Lesley F. Portnoy
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
lportnoy@pomlaw.com

*Counsel for Ari Gold and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Ari Gold*

15