UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RYAN MASCHHOFF, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>POLISHED.COM INC. F/K/A 1847 GOEDEKER INC., DOUGLAS T. MOORE, ROBERT D. BARRY, ALBERT FOUERTI, MARIA JOHNSON, ELLERY W. ROBERTS, THINKEQUITY, A DIVISION OF FORDHAM FINANCIAL MANAGEMENT, INC., AEGIS CAPITAL CORP., and SPARTAN CAPITAL SECURITIES, LLC,<br><br>    Defendants. | Case No.  1:22-cv-06606-NGG-VMS<br><br>Date of Service:  January 13, 2023 |

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ARI GOLD FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 4

    I.     GOLD SHOULD BE APPOINTED LEAD PLAINTIFF ..................................... 4

         A.    Gold Has the "Largest Financial Interest" in the Action ........................... 5

         B.    Gold Otherwise Satisfies the Requirements of Rule 23 .............................. 6

    II.    GOLD'S SELECTION OF COUNSEL SHOULD BE APPROVED .................... 7

    III.   THE COMPETING MOTIONS SHOULD BE DENIED ..................................... 7

         A.    No Eligible Competing Movant Has Alleged a Larger Financial Interest Than Gold ............................................................................... 8

         B.    Eden Alpha Is Atypical and Inadequate and Subject to Unique Defenses ...................................................................................... 8

             1.    Eden Alpha lacks standing to pursue Securities Act claims against the Defendants .................................................. 8

             2.    Eden Alpha's status as a hedge fund with complex trading strategies make it atypical of the Class at large ........................... 12

    IV.   ALTERNATIVELY, GOLD SHOULD BE APPOINTED CO-LEAD PLAINTIFF WITH EDEN ALPHA TO PROTECT THE INTERESTS OF THE CLASS ................................................................................................. 14

CONCLUSION ........................................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applestein v. Medivation Inc*, No. C 10-00998 MHP,
 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) ........................................................................14

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)........................................................................2, 5, 6

*Basic, Inc. v. Levinson*,
 485 U.S. 224, 99 L. Ed. 2d 194, 108 S. Ct. 978 (1988)................................................12, 13, 14

*Demaria v. Andersen*,
 318 F.3d 170 (2d Cir. 2003)...............................................................................................3, 9

*Doherty v. Pivotal Software, Inc.*, No. 3:19-CV-03589-CRB,
 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ........................................................................10

*Dookeran v. Xunlei Ltd.*, No. 18-CV-467 (RJS),
 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)........................................................................2, 6

*Foley v. Transocean Ltd.*,
 272 F.R.D. 126 (S.D.N.Y. 2011) .......................................................................................5, 6

*Galmi v. Teva Pharm. Indus.*,
 302 F. Supp. 3d 485 (D. Conn. 2017)....................................................................................13

*George v. China Auto. Sys., Inc.*, No. 11-CV-7533 (KBF),
 2013 WL 3357170 (S.D.N.Y. July 3, 2013) ...........................................................................9

*Hoi Ming Michael Ho v. Duoyuan Glob. Water, Inc.*,
 887 F. Supp. 2d 547 (S.D.N.Y. 2012)......................................................................................9

*Howard v. Liquidity Servs.*,
 322 F.R.D. 103 (D.D.C. 2017)..............................................................................................12

*In re Bally Total Fitness Sec. Litig.*, No. 04C3530,
 2005 WL 627960 (N.D. Ill. Mar. 15, 2005)..............................................................................8

*In re Bank One S'holders Class Ac*tions,
 96 F. Supp. 2d 780 (N.D. Ill. 2000) ..................................................................................3, 12

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 NGG RER,
 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)...........................................................................1, 5

ii

*In re Critical Path*,
  156 F. Supp. 2d 1102 (N.D. Cal. 2001) ...........................................................12, 13

*In re Initial Pub. Offering Sec. Litig.*,
  227 F.R.D. 65 (S.D.N.Y. 2004),
  *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006)....................................3, 9, 11

*In re Lucent Techs., Inc. Sec. Litig.*,
  221 F. Supp. 2d 472 (D.N.J. 2001) ......................................................................15

*In re MicroStrategy Sec. Inc. Litig.*,
  110 F. Supp. 2d 427 (E.D. Va. 2000) ................................................................3, 12

*In re Orion Sec. Litig.*, No. 08 CIV. 1328 (RJS),
  2008 WL 2811358 (S.D.N.Y. July 8, 2008) ...........................................................6

*In re Peregrine Sys., Inc. Sec. Litig.*, No. Civ. 02CV870-J(RBB),
  2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ....................................................4, 15

*In re Proshares Tr. Sec. Litig.*,
  889 F. Supp. 2d 644 (S.D.N.Y. 2012).....................................................................16

*In re Quarterdeck Office Sys., Inc. Sec. Litig.*, No. CV 92-3970-DWW(GHKx),
  1993 WL 623310 (C.D. Cal. Sept. 30, 1993) .......................................................9, 11

*In re Quintus Sec. Litig.*,
  201 F.R.D. 475 (N.D. Cal. 2001)..........................................................................9, 11

*In re Vicuron Pharms., Inc. Sec. Litig.*,
  225 F.R.D. 508 (E.D. Pa. 2004).................................................................................5

*In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15CV1249,
  2017 WL 2062985 (S.D.N.Y. May 15, 2017) ..........................................................8

*In re Worldcom, Inc. Sec. Litig.*,
  308 F. Supp. 2d 214 (S.D.N.Y. 2004)......................................................................16

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................5, 6

*Lau v. Opera Ltd.*,
  527 F. Supp. 3d 537 (S.D.N.Y. 2021)........................................................................9

*Malasky v. IAC/Interactivecorp*, No. 04 CIV. 7447 (RJH),
  2004 WL 2980085 (S.D.N.Y. Dec. 21, 2004),
  *on reconsideration in part*, No. 04 CIV. 7447 (RJH),
  2005 WL 549548 (S.D.N.Y. Mar. 7, 2005) .............................................................15

*Miller v. Ventro Corp.*, No. 01 Civ. 1287,
   2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) .......................................................................15

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17CV06130LTSSN,
   2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ...........................................................................5

*Paige v. Magnum Hunter Res. Corp.*,
   616 F. App'x 442 (2d Cir. 2015) ...............................................................................................9

*Petzschke v. Century Aluminum Co.*,
   729 F.3d 1104 (9th Cir. 2013) .................................................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................4, 15

*Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE),
   2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ......................................................................3, 14

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)....................................................................................................15

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..............................................................................................................9

*Takara Trust v. Molex, Inc.*,
   229 F.R.D. 577 (N.D. Ill. 2005)................................................................................................5

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617(RJH),
   2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ........................................................................1, 5

## Statutes

15 U.S.C. § 77z-1.............................................................................................. *passim*

15 U.S.C. § 78u-4 ............................................................................................. *passim*

15 U.S.C. § 77k................................................................................................. *passim*

15 U.S.C. § 77l(a)(2).......................................................................................... *passim*

15 U.S.C. § 77o................................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 ................................................ *passim*

## Rules

Fed. R. Civ. P. 23.............................................................................................. *passim*

Movant Gold[1] respectfully submits this Memorandum of Law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 11); and in opposition to the competing motions of: (i) Anthony Porraro ("Porraro") (Dkt. No 6) and (ii) Eden Alpha C.I., L.P. ("Eden Alpha") (Dkt. No. 9).

### PRELIMINARY STATEMENT

The Action is a putative class action securities lawsuit on behalf of investors in Polished securities. As with all federal class action securities lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the Action; *and* who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

While the PSLRA does not define "financial interest," courts in the Second Circuit, including this District, recognize that the amount of financial loss is the most significant factor to be considered. *See, e.g.*, *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 NGG RER, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617(RJH), 2006 WL 197036, at *3 (S.D.N.Y. Jan. 25, 2006).

Here, the eligible movant with the largest financial interest in this litigation is Gold, having incurred losses of approximately $901,231 in connection with his transactions in Polished securities as a result of the Defendants' alleged malfeasance. The table below sets forth Gold's losses compared to those of the competing movants:

| Movant | (Loss) / Gain | |
|---|---|---|
| | Exchange Act | Securities Act |
| Gold | ($901,231) | ($749,765) |
| Porraro | ($36,907) | $10,607 |

---

[1] All capitalized terms herein are defined in Gold's moving brief, unless otherwise indicated. *See* Dkt. No. 11-2.

| Eden Alpha | ($1,051,513) | ($0) |
|---|---|---|

As the table reflects, Gold's loss of $901,231 is the largest of any eligible competing movant and is indeed over ***twenty-four*** times the size of the alleged loss of Porraro, the only other eligible movant. Although one competing movant, Eden Alpha, claims a larger loss than Gold, Eden Alpha is ineligible for appointment as lead plaintiff because it is atypical and inadequate within the meaning of Rule 23 as well as subject to unique defenses, as discussed in detail below. Accordingly, Gold possesses the largest financial interest in this litigation of any eligible movant.

In addition to his significant financial interest, Gold also satisfies the adequacy and typicality requirements of Rule 23. Gold is aware of no conflict between his interests and those of the Class, his significant losses give him a sufficient stake in the outcome of this Action to ensure vigorous advocacy, and, in Pomerantz, Gold has retained qualified and experienced counsel. *See Dookeran v. Xunlei Ltd.*, No. 18-CV-467 (RJS), 2018 WL 1779348, at *2-3 (S.D.N.Y. Apr. 12, 2018). Gold, like other Class members, purchased Polished securities at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon disclosure of those misrepresentations or omissions. *See Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018). Further demonstrating his adequacy, Gold has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 11-7.

In stark contrast, Eden Alpha, the only competing movant claiming a larger loss than Gold, is atypical and inadequate and subject to unique defenses, and thus ineligible for appointment as Lead Plaintiff, irrespective of its financial interest in this litigation.

2

First, Eden Alpha is atypical and inadequate under Rule 23 and subject to the unique defense that it lacks standing to pursue the Action's Securities Act claims because Eden Alpha cannot trace *any* of its losses to the Registration Statement issued in connection with Polished's IPO. *See Demaria v. Andersen*, 318 F.3d 170, 178 (2d Cir. 2003); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 120 (S.D.N.Y. 2004), *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006). Here, Eden Alpha purchased *all* of its Polished shares after the Company conducted a secondary public offering on June 2, 2021[2] (the "SPO") (*see* Dkt. No. 10-3 at *2). After the secondary offering, only 1.06% of Polished shares in the market were issued in the IPO, whereas 86.58% were issued in the SPO. Eden Alpha thus cannot prove that *any* of the Polished shares it purchased were traceable to the IPO as opposed to the SPO.

Second, Eden Alpha is further atypical and inadequate because it evidently employs more complex trading strategies than the average investor, which raises serious concerns regarding whether it relied on the accuracy of Polished's share price and Defendants' statements when purchasing the Company's securities. *See Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *10 (S.D.N.Y. Nov. 12, 2021); *In re MicroStrategy Sec. Inc. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000); *In re Bank One S'holders Class Ac*tions, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000). Here, Eden Alpha is a self-professed "hedge fund"[3] with an

---

[2] *See* Polished.com Inc. (f/k/a 1847 Goedeker Inc.), *1847 Goedeker Announces Closing of $205 Million Public Offering, $70 Million Debt Financing and Acquisition of Appliances Connection*, Polished.com (June 2, 2021), https://investor.polished.com/news/news-details/2021/1847-Goedeker-Announces-Closing-of-205-Million-Public-Offering-70-Million-Debt-Financing-and-Acquisition-of-Appliances-Connection/default.aspx ("announc[ing] the closing of [Polished's] $205 million underwritten public offering" that was "comprised 91,111,111 units, [with] each unit consisting of one share of common stock and one warrant to purchase one share of common stock" with "[e]ach unit . . . sold to the public").

[3] *About*, Eden Alpha, https://www.eden-funds.com/about (last visited Jan. 13, 2023).

3

"unconventional"[4] investment strategy that "invest[s] in special situations"[5] and "businesses that trade below their value",[6] which clearly makes Eden Alpha atypical of other Class members, the majority of whom would have simply relied on the accuracy of Polished's share price and Defendants' statements when deciding to purchase the Company's shares.  This likewise subjects Eden Alpha to unique arguments by Defendants regarding its complex trading strategy, Eden Alpha's defense of which will necessarily distract it from its prosecution of the Class's claims.

Even assuming, *arguendo*, that the Court were to appoint Eden Alpha as Lead Plaintiff (which it should not), Gold respectfully submits that he should be appointed Co-Lead Plaintiff alongside Eden Alpha to ensure that the interests of Class members are adequately protected, in light of the foregoing issues.  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004); *In re Peregrine Sys., Inc. Sec. Litig.*, No. Civ. 02CV870-J(RBB), 2002 WL 32769239, at *11-12 (S.D. Cal. Oct. 11, 2002).

For the reasons set forth herein, Gold respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## ARGUMENT

### I.      GOLD SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has either filed the complaint or made a [timely] motion" for appointment, "has the largest financial interest in the relief sought by the class," *and* "otherwise satisfies the requirements of Rule 23."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must "make a *prima facie* showing that they meet [the requirements] of

---

[4] *Id.*

[5] Eden Alpha, *About*, LinkedIn, https://www.linkedin.com/company/eden-alpha/about/ (last visited Jan. 13, 2023).

[6] *Id.*

Rule 23." *Aude*, 2018 WL 1634872, at *3; *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II). Here, the most adequate plaintiff is Gold.

### A.      Gold Has the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." *Id.* §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in this District, the Second Circuit, and around the country recognize that the amount of financial loss is the most significant factor to be considered. *See, e.g.*, *Comverse*, 2007 WL 680779, at *3 (recognizing most courts consider "the approximate loss a plaintiff suffered during the class period[] to be most influential in identifying the plaintiff with the largest financial interest"); *Weiss*, 2006 WL 197036, at *3 (same); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17CV06130LTSSN, 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017) ("Courts generally find [the approximate loss suffered] to be the most compelling [*Lax* factor].")"; *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (finding "the amount of financial loss is the most significant" factor); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Under the foregoing analysis, no movant eligible for appointment as Lead Plaintiff in the Action has alleged a larger financial interest in this litigation than Gold. As the chart at pp. 1-2

reflects, Gold's loss of $901,231 is larger than that of the only other eligible competing movant, Porraro, who only claims to have incurred losses of, at most, $36,907 under the Exchange Act, far less than Gold, who suffered losses over ***twenty-four times*** the size of Porraro's.  Although one competing movant, Eden Alpha, has alleged a larger loss than Gold, Eden Alpha is atypical and inadequate within the meaning of Rule 23 and subject to unique defenses, and thus disqualified from consideration, as discussed *infra* at Section III.B.

### B.       Gold Otherwise Satisfies the Requirements of Rule 23

Gold has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23.  *See Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94.  First, Gold's claims satisfy the typicality requirement of Rule 23(a)(3) because his claims against Defendants are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See, e.g.*, *In re Orion Sec. Litig.*, No. 08 CIV. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008).  Second, Gold satisfies the adequacy requirement of Rule 23(a)(4) because "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy."  *Foley*, 272 F.R.D. at 131; *see also Dookeran*, 2018 WL 1779348, at *2-3.  Further demonstrating his adequacy, Gold has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 11-7.

* * * * *

6

Because Gold has the largest financial interest of any eligible Lead Plaintiff applicant in the relief sought by the Class and otherwise satisfies the requirements of Rule 23, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

To overcome the strong presumption entitling Gold to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

## II.    GOLD'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See id.* §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v). The Court should interfere with the Lead Plaintiff's selection only when necessary to "protect the interests of the class." *Id.* §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Gold has selected Pomerantz as Lead Counsel for the Class. As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Dkt. No. 11-8. Thus, the Court may be assured that by approving Gold's selection of counsel, the members of the Class will receive the best legal representation available.

## III.    THE COMPETING MOTIONS SHOULD BE DENIED

As discussed further in Section I.A., *supra*, no eligible competing movant has alleged a larger financial interest than Gold. Although Eden Alpha claims to have incurred a significant loss because of Defendants' alleged malfeasance, Eden Alpha cannot trigger the "most adequate plaintiff" presumption, irrespective of its financial interest, because Eden Alpha is atypical and inadequate under Rule 23 for the reasons discussed below and subject to unique defenses.

7

### A.     No Eligible Competing Movant Has Alleged a Larger Financial Interest Than Gold

Apart from Gold, the only eligible competing movant for appointment as Lead Plaintiff is Porraro, whose claimed losses of $36,907 are dwarfed by Gold's own losses of $901,231. Accordingly, Gold has the largest financial interest in this Action as compared to Porraro, the only other eligible competing movant.  This fact alone mandates denial of Porraro's competing motion.

### B.     Eden Alpha Is Atypical and Inadequate and Subject to Unique Defenses

Eden Alpha is ineligible for appointment as Lead Plaintiff because it is atypical and inadequate within the meaning of Rule 23 and subject to unique disqualifying defenses, as discussed in detail below.

### 1.     Eden Alpha lacks standing to pursue Securities Act claims against the Defendants

Eden Alpha is atypical and inadequate under Rule 23, as well as subject to the unique defense that it lacks standing to pursue this Action's Securities Act claims, because it cannot trace *any* of its losses to the Registration Statement issued in connection with Polished's IPO.  This disqualifies Eden Alpha from appointment as Lead Plaintiff.

The PSLRA precludes the appointment of a lead plaintiff that "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(bb), 78u-4(a)(3)(B)(iii)(II)(bb); *see also In re Bally Total Fitness Sec. Litig.*, No. 04C3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."); *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15CV1249, 2017 WL 2062985, at *3 (S.D.N.Y. May 15, 2017) ("[T]ypicality may fail where named plaintiffs will be forced to 'expend considerable time on unique defenses—precisely the

situation the case law does not condone.'" (quoting *George v. China Auto. Sys., Inc.*, No. 11-CV-7533 (KBF), 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013))).

"[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). In cases alleging both Section 10(b) claims under the Exchange Act and Section 11 claims under the Securities Act, courts have found that a proposed class representative's "lack of standing under [S]ection 11 [of the Securities Act] qualifies as a 'unique defense' sufficient to defeat the typicality of [the] proposed class representative." *Initial Pub. Offering*, 227 F.R.D. at 120; *see also In re Quarterdeck Office Sys., Inc. Sec. Litig.*, No. CV 92-3970-DWW(GHKx), 1993 WL 623310, at *3 (C.D. Cal. Sept. 30, 1993) ("Plaintiffs' lack of standing to bring the § 11 claim indicates that their claims are not typical [or adequate]."); *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 489 (N.D. Cal. 2001) (finding movant "can be eliminated quickly" because it "lacks standing to bring any [S]ection 11 [Securities Act] claims on behalf of the class" and "creating a sub-class of plaintiffs who [have standing on those claims] . . . is unnecessary as long as a lead plaintiff . . . who [has standing for both the Securities Act and Exchange Act claims] is selected").

Only "purchasers who can trace their shares to an allegedly misleading registration statement have standing to sue under § 11 of the [Securities] Act." *Demaria*, 318 F.3d at 178; *see also Paige v. Magnum Hunter Res. Corp.*, 616 F. App'x 442, 447 (2d Cir. 2015) (noting the same); *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 561 (S.D.N.Y. 2021) (finding because plaintiff "did not purchase any shares of [the company] until . . . after the [offerings at issue]" plaintiff "failed to allege how the stocks she purchased were traceable to the stocks issued in the public offerings" and, "[t]herefore . . . lack[ed] standing to bring the Section 11 claims asserted"); *Hoi Ming Michael*

*Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 561 (S.D.N.Y. 2012) ("When more than one registration statement is alleged as defective, Plaintiffs may establish traceability only through proof of a direct chain of title from the original offering to the ultimate owner[.]" (quoting *Initial Pub. Offering*, 227 F.R.D. at 120)); *Petzschke v. Century Aluminum Co.*, 729 F.3d 1104, 1106 (9th Cir. 2013) ("[W]hen a company has issued shares under more than one registration statement, ***the plaintiff must prove that her shares were issued under the allegedly false or misleading registration statement, rather than some other registration statement.***" (emphasis added)); *Doherty v. Pivotal Software, Inc.*, No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *7 (N.D. Cal. Nov. 8, 2019) (finding that movant was atypical and lacked standing because it could not "adequately plead[] that its shares are traceable to the [company's] IPO").

This Action alleges violations of Section 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2) and 77o). *See* Complaint ¶¶ 4, 73-92. Each of these claims is premised on allegations that the Registration Statement for the IPO was defective. *See id.* ¶¶ 73-92. Accordingly, for Eden Alpha to have suffered damages and thus have standing to pursue these Securities Act claims, it must be apparent that at least one of Eden Alpha's Polished shares are traceable to the Registration Statement for the IPO. Yet Eden Alpha cannot prove that it purchased even a ***single*** share of Polished stock that is traceable to the Registration Statement for the Company's IPO because it purchased ***all*** of its Polished shares ***after*** the Company conducted its June 2, 2021 SPO.

Specifically, on or about July 27, 2020, Defendants held the IPO, issuing approximately ***1,111,200*** Polished shares to the public at $9.00 per share, pursuant to the Registration Statement. Complaint ¶ 2. Thereafter, on June 2, 2021, Polished completed the SPO pursuant to a different registration statement and, by consequence, flooded the public market for Polished shares with an

additional "*91,111,111* units, [with] each unit consisting of one share of common stock and one warrant to purchase one share of common stock" with "[e]ach unit . . . sold to the public" (emphasis added).[7]  There are currently 105,228,000 shares of publicly traded Polished stock outstanding. Thus, following the secondary offering, Polished shares traceable to the Registration Statement for the IPO were reduced to *1.06%* of the total Polished shares in circulation on the public market, whereas shares traceable to the registration statement for the SPO now made up *86.58%* of the total Polished shares in circulation on the public market.

Here, Eden Alpha purchased *all* of its Polished shares on or after March 31, 2022— approximately *nine months* after the SPO.  *See* Dkt. No. 10-3 at *2.  Accordingly, Eden Alpha acquired *no shares* exclusively traceable to the Registration Statement for the IPO and, in fact, was approximately *82 times* more likely to have acquired shares traceable to the registration statement for the SPO rather than the IPO on each of its transactions in Polished securities.  Thus, Eden Alpha faces serious challenges to its standing to bring this Action's Securities Act claims and is therefore inadequate and atypical under Rule 23.  *See Initial Pub. Offering*, 227 F.R.D. at 120 (finding proposed class representative's "lack of standing under [S]ection 11 [in an action alleging both Section 11 and Section 10(b) claims] qualifies as a 'unique defense' sufficient to defeat the typicality of [the] proposed class representative"); *Quarterdeck*, 1993 WL 623310, at *3 (finding "[p]laintiffs' lack of standing to bring the § 11 claim [in an action alleging both Section 11 and Section 10(b) claims] indicates that their claims are not typical [or adequate]"); *Quintus*, 201 F.R.D. at 489 ("quickly" eliminating movant from consideration for appointment as lead plaintiff that "lacks standing to bring any [S]ection 11 claims on behalf of the class" in favor of other movants with standing to bring *both* the action's Securities Act and Exchange Act claims).

---

[7] *See* source and accompanying text at *supra* n.2.

### 2.    Eden Alpha's status as a hedge fund with complex trading strategies make it atypical of the Class at large

Eden Alpha is further atypical of the Class, inadequate to protect the Class's interests, and subject to a unique defense because it is a hedge fund that employs more complex trading strategies than the average investor—who, by contrast, would have simply relied on the accuracy of Polished's share price and Defendants' alleged misstatements when purchasing the Company's securities. Courts routinely decline to appoint such investors as lead plaintiffs in PSLRA actions. *See, e.g.*, *MicroStrategy*, 110 F. Supp. 2d at 437 ("Wolverine Trading was an atypical investor that engages in transactions far beyond the scope of what a typical investor contemplates"); *Bank One*, 96 F. Supp. 2d at 784 (refusing to appoint hedge fund as lead plaintiff because of its complex trading strategy and because it "stand[s] . . . in the place of whatever number of investors are participants in its managed fund").

"The fraud-on-the-market theory, the premise of which is that the market price accurately reflects publicly available information, is central to securities actions." *In re Critical Path*, 156 F. Supp. 2d 1102, 1109-10 (N.D. Cal. 2001) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 99 L. Ed. 2d 194, 108 S. Ct. 978 (1988)). Indeed:

> [T]he *Basic* Court established a rebuttable presumption of reliance, predicated on the notion that '[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." To invoke Basic's presumption of reliance, "a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."

*Howard v. Liquidity Servs.*, 322 F.R.D. 103, 116 (D.D.C. 2017) (citations omitted).

The *Basic* court held that "*[a]ny* showing that severs the link between the alleged misrepresentation and . . . [plaintiff's] decision to trade at a fair market price[] will be sufficient to

rebut the presumption of reliance." *Basic*, 485 U.S. at 248 (emphasis added).  In that case, which involved news of a corporate merger, the Court stated, for example, that a plaintiff who was aware of the truth of the merger discussions "but sold his shares nevertheless because of unrelated concerns . . . ***could not be said to have relied upon the integrity of the price he knew had been manipulated***." *Id.* at 249.  Accordingly, "the class is not served by its representative coming under . . . scrutiny" for whether it "was actually relying on the [company's] market price," for example, when the class representative traded on the belief that the market did ***not*** accurately reflect the value of the shares at issue.  *Critical Path*, 156 F. Supp. 2d at 1110.  An investor who employs complex and unorthodox trading strategies "may be subject to the unique defense that it did ***not*** actually rely on the company's alleged misstatements", which "is sufficient for a court to decline to appoint that plaintiff as lead [plaintiff]."  *Galmi v. Teva Pharm. Indus.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) (emphasis added); *see also China Auto.*, 2013 WL 3357170, at \*7 (denying class certification, in part, because plaintiffs "subject themselves to unique inquiries regarding their trading patterns and why they made investment decisions, [including] whether the fraud was in fact irrelevant to their purchasing and sale decisions," and because "[t]hese inquiries will also require considerable time and resources and indeed threaten to become the focus of the litigation").

Here, Eden Alpha describes itself on its website as a "hedge fund" that employs an "unconventional approach to . . . capital management."[8]  Likewise, Eden Alpha's LinkedIn profile states that it "invest[s] in . . . businesses that trade below their value" and that "increase their value regardless of the movements in the stock market."[9]  This same section also states that Eden Alpha

---

[8] *About*, Eden Alpha, https://www.eden-funds.com/about (last visited Jan. 13, 2023).

[9] Eden Alpha, *About*, LinkedIn, https://www.linkedin.com/company/eden-alpha/about/ (last visited Jan. 13, 2023).

"invest[s] in special situations such as spinoffs, stubs, arbitrage plays, liquidations, and a hedged volatility strategy."[10]  Accordingly, Eden Alpha's appointment as Lead Plaintiff will foreseeably invite a litany of arguments by Defendants challenging its touted unique trading style and ability to represent Class members who actually ***relied*** on Defendants' alleged misstatements or omissions and the accuracy of the market price of the Company's securities when deciding to invest in the Company's stock. *See DraftKings*, 2021 WL 5282006, at \*10 ("The question whether [lead plaintiff movant]'s trading practice compromise his claims and his adequacy as a class representative is sure to arise in the litigation. That potential to distract militates against his appointment."); *Applestein v. Medivation Inc*, No. C 10-00998 MHP, 2010 WL 3749406, at \*3 (N.D. Cal. Sept. 20, 2010) (finding it "sufficient . . . to raise serious concerns about [movant's] typicality and about [its] susceptibility to the defense that [it] was trading in response to information other than the alleged misstatements and omissions made by [Defendants]").  Here, based upon its touted "unique" trading strategies, Defendants would have a meritorious argument that Eden Alpha considered the share price at which it purchased its Polished shares to be "below their value", reflecting its non-reliance on the Company's share price, and thereby rebutting the *Basic* presumption. There is simply no reason to saddle the Class with a representative subject to such debilitating issues.

## IV.   ALTERNATIVELY, GOLD SHOULD BE APPOINTED CO-LEAD PLAINTIFF WITH EDEN ALPHA TO PROTECT THE INTERESTS OF THE CLASS

Assuming, *arguendo*, that the Court were to appoint Eden Alpha as Lead Plaintiff, Gold respectfully submits that he should be appointed as a Co-Lead Plaintiff alongside Eden Alpha to ensure that the interests of all Class members are adequately represented.  "[C]reating a co-

---

[10] *Id.*

14

lead structure here will have the salutary effect of providing greater stability in the prosecution of th[is] . . . action[], should . . . either co-lead plaintiff . . . not adequately represent the class[.]" *Pirelli*, 229 F.R.D. at 420. Indeed, "this structure provides flexibility and stability to the class if presented with the situation [as the Class is here] that [a] co-lead plaintiff fails to address certain interests within the class . . . or compromises the class in some fashion." *Malasky v. IAC/Interactivecorp*, No. 04 CIV. 7447 (RJH), 2004 WL 2980085, at *4 (S.D.N.Y. Dec. 21, 2004), *on reconsideration in part*, No. 04 CIV. 7447 (RJH), 2005 WL 549548 (S.D.N.Y. Mar. 7, 2005); *see also Peregrine*, 2002 WL 32769239, at *11-12 (appointing "co-lead plaintiffs, one to lead litigation with respect to the section 11 [Securities Act] plaintiffs and another to lead litigation with respect to the section 10(b) [Exchange Act] plaintiffs"); *Miller v. Ventro Corp.*, No. 01 Civ. 1287, 2001 WL 34497752, at *11-12 (N.D. Cal. Nov. 28, 2001) (appointing as co-lead plaintiffs separate movants in order to ensure that the distinct classes proposed in various consolidated actions involving both bondholders and stockholders were adequately represented); *In re Lucent Techs., Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 483, 488 (D.N.J. 2001) (concluding, in light of the different claims raised, that appointing a co-lead plaintiff would provide "additional representation [that] may benefit the class and provide flexibility, if needed, in the future").

Here, as discussed in detail in Section III.B.1., *supra*, Eden Alpha is subject to a unique defense that it lacks standing to pursue this Action's Securities Act claims and thus has no financial interest or incentive to vigorously prosecute those claims on behalf of the Class. The Securities Act claims are particularly critical here, as they do not require a plaintiff to prove reliance or scienter, increasing the Class's chances of obtaining a significant recovery. *See Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004) (noting that "[n]either Section 11 nor Section 12(a)(2) [of the Securities Act] requires that plaintiffs allege the scienter or reliance elements of a fraud

15

cause of action"); *In re Proshares Tr. Sec. Litig.*, 889 F. Supp. 2d 644, 652 (S.D.N.Y. 2012) ("Section 11 does not require pleading or proof that a defendant acted with intent to defraud or even knew that misrepresentations or omissions had been made."); *In re Worldcom, Inc. Sec. Litig.*, 308 F. Supp. 2d 214, 227 (S.D.N.Y. 2004) ("[I]t is important to remember that Section 11 [of the Securities Act] is a strict liability statute."). Further, as discussed more fully in Section III.B.2., *supra*, Eden Alpha is a hedge fund that employs a complex trading strategy and there are serious concerns regarding whether it relied on the accuracy of Polished's share price and Defendants' statements when purchasing the Company's securities, thereby subjecting Eden Alpha to a second unique defense. Accordingly, the Class will benefit from a Co-Lead Plaintiff structure, with Gold appointed alongside Eden Apha as Co-Lead Plaintiff, because Gold ***does*** have standing to prosecute both the Exchange Act and Securities Act claims alleged in this Action, and, given the magnitude of his loss, is moreover highly incentivized to vigorously prosecute those claims on behalf of the Class. Further, unlike Eden Alpha, there is no indication that Gold employed an unconventional or complex trading strategy when purchasing his Polished securities that would call into question whether he relied on Defendants' alleged misstatements or omissions or the accuracy of the Company's stock price. Accordingly, by implementing such a Co-Lead Plaintiff structure, the Court would ensure that the interests of all Class members are adequately protected from any potential prejudice arising from Eden Alpha's shortcomings, as outlined above.

## CONCLUSION

For the foregoing reasons, Gold respectfully requests that the Court issue an Order: (1) appointing Gold as Lead Plaintiff for the Class; and (2) approving Gold's selection of Pomerantz as Lead Counsel for the Class.

Dated:  January 13, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Lesley F. Portnoy
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
lportnoy@pomlaw.com

*Counsel for Ari Gold and Proposed Lead Counsel*
*for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Ari Gold*

17