UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RYAN MASCHHOFF, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>POLISHED.COM INC. F/K/A 1847 GOEDEKER INC., DOUGLAS T. MOORE, ROBERT D. BARRY, ALBERT FOUERTI, MARIA JOHNSON, ELLERY W. ROBERTS, THINKEQUITY, A DIVISION OF FORDHAM FINANCIAL MANAGEMENT, INC., AEGIS CAPITAL CORP., and SPARTAN CAPITAL SECURITIES, LLC,<br><br>    Defendants. | Case No.  1:22-cv-06606-NGG-VMS<br><br>Date of Service:  January 20, 2023 |

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ARI GOLD FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

Movant Gold[1] respectfully submits this Reply Memorandum of Law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 11); and in opposition to the competing motion of Eden Alpha (Dkt. No. 9).[2]

**PRELIMINARY STATEMENT**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii). This presumption can only be rebutted by proof that the movant with the largest financial interest is atypical or inadequate. *Id.* §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).

Here, as discussed at length in Gold's opposition brief (Dkt. No. 13), Gold is the only movant who satisfies the PSLRA's criteria to be entitled to the "most adequate plaintiff" presumption. First, Gold incurred a significant loss of $901,231 as a result of the Defendants' alleged malfeasance. No movant eligible for appointment as Lead Plaintiff has claimed a larger loss than Gold. As such, Gold has the largest financial interest within the meaning of the PSLRA. Second, as discussed in greater detail in his opposition brief, Gold has made the requisite *prima facie* showings of adequacy and typicality under Rule 23. *See* Dkt. No. 13 at 6. Under the PSLRA, Gold is thus entitled to the statutory presumption that he is "the most adequate plaintiff" of the Class, and thus the presumptive Lead Plaintiff.

---

[1] All capitalized terms herein are defined in Gold's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 11-2, 13.

[2] Initially, one other putative Class member, Porraro, filed a similar competing motion. Dkt. No. 6. Porraro has not opposed the competing motions of Gold and Eden Alpha nor filed anything further in support of his own motion since his initial submission. Accordingly, Porraro appears to have abandoned his motion.

No competing movant has challenged the quantum of Gold's financial interest, nor argued that he is inadequate, atypical, or otherwise ineligible for appointment. Accordingly, Gold should be appointed Lead Plaintiff for the Class.

In stark contrast with Gold, Eden Alpha—the only competing movant—is ineligible for appointment, irrespective of its claimed losses, because Eden Alpha fails to satisfy the typicality and adequacy requirements of Rule 23 and is subject to unique disqualifying defenses. First, Eden Alpha is subject to the unique defense that it lacks standing to pursue this Action's Securities Act claims because, as detailed in Gold's opposition brief (Dkt. No. 13 at 3, 8-11), Eden Alpha cannot trace *any* of its losses to the Registration Statement issued in connection with Polished's IPO. *See Demaria v. Andersen*, 318 F.3d 170, 178 (2d Cir. 2003); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 120 (S.D.N.Y. 2004), *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006). Specifically, Eden Alpha purchased *all* of its Polished shares after the Company conducted an SPO (*see* Dkt. No. 10-3 at *2), at a time when only 1.06% of Polished shares in the market were issued in or traceable to the IPO, whereas 86.58% of Polished Shares were issued in or traceable to the SPO, making it impossible for Eden Alpha to trace *any* of its Polished shares to the IPO as opposed to the SPO.

Moreover, Eden Alpha is further ineligible for consideration because, as a hedge fund that touts its purportedly "unconventional approach to . . . capital management", including "invest[ing] in special situations" and "businesses that trade below their value" and that "increase their value regardless of the movements in the stock market", the Court can anticipate that the Defendants will aggressively litigate, *inter alia*, the question of whether Eden Alpha even relied upon the Defendants' false and misleading statements in purchasing Polished securities, in an effort to rebut the presumption of reliance established in *Basic, Inc. v. Levinson*, 485 U.S. 224, 99 L. Ed. 2d 194,

2

108 S. Ct. 978 (1988).   The litigation of these issues—which are unique to Eden Alpha and irrelevant to most absent Class members—will necessarily distract Eden Alpha from its prosecution of the Class's claims.   Courts routinely reject movants for lead plaintiff appointment that are even ***potentially*** subject to such unique defenses, finding no reason to saddle the Class with such distractions.   *See Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *10 (S.D.N.Y. Nov. 12, 2021); *In re MicroStrategy Sec. Inc. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000); *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000).

For the foregoing reasons, Gold respectfully requests that the Court grant his motion in its entirety and deny the competing motion of Eden Alpha.

## ARGUMENT

### I.   EDEN ALPHA IS ATYPICAL AND INADEQUATE AND SUBJECT TO UNIQUE DEFENSES

#### A.   Eden Alpha lacks standing to pursue Securities Act claims against the Defendants

In actions alleging both Securities Act and Exchange Act claims, like this Action, Courts nationwide, including in the Second Circuit, routinely find that "lack of standing under [S]ection 11 [of the Securities Act] qualifies as a 'unique defense' sufficient to defeat the typicality of [the] proposed class representative."   *Initial Pub. Offering*, 227 F.R.D. at 120 (concerning both Securities Act and Exchange Act claims); *see also, e.g.*, *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 489 (N.D. Cal. 2001) ("quickly" disposing of movant that "lacks standing to bring any [S]ection 11 claims [under the Securities Act] on behalf of the class" in favor of other movants with standing to bring ***both*** of the action's Securities Act and Exchange Act claims).

In the Second Circuit, it is well-settled that only "purchasers who can trace their shares to an allegedly misleading registration statement have standing to sue under § 11 of the [Securities]

Act." *Demaria*, 318 F.3d at 178; *see also Paige v. Magnum Hunter Res. Corp.*, 616 F. App'x 442, 447 (2d Cir. 2015); *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 561 (S.D.N.Y. 2021) (finding plaintiff "lack[ed] standing to bring the Section 11 claims asserted" because plaintiff "failed to allege how the stocks she purchased were traceable to the stocks issued in the public offerings"); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 561 (S.D.N.Y. 2012) ("Plaintiffs may establish traceability *only* through proof of 'a direct chain of title from the original offering to the ultimate owner[.]'" (emphasis added) (quoting *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. at 117-18)); *Petzschke v. Century Aluminum Co.*, 729 F.3d 1104, 1106 (9th Cir. 2013) ("[W]hen a company has issued shares under more than one registration statement, *the plaintiff must prove that her shares were issued under the allegedly false or misleading registration statement, rather than some other registration statement*." (emphasis added)).

As discussed more fully in Gold's opposition brief, Eden Alpha purchased *all* of its Polished shares only *after* the Company conducted an SPO. Dkt. No. 13 at 3, 10-11. Following the SPO, only *1.06%* of Polished shares in the public market were issued in the IPO, whereas *86.58%* were issued in the SPO, meaning that Eden Alpha was approximately *82 times* more likely to have acquired shares traceable to the registration statement for the SPO rather than the IPO on each of its transactions in Polished securities.[3] *Id.* at 11. Eden Alpha thus cannot prove that *any* of the Polished shares it purchased were traceable to the IPO as opposed to the SPO and, accordingly, lacks standing to pursue this Action's Securities Act claims. Eden Alpha is therefore subject to a unique disqualifying defense, atypical of the Class it seeks to represent, and inadequate to represent the Securities Act claims in this Action. Gold respectfully submits that the Court

---

[3] The remaining 12.36% of Polished shares in the market following the SPO would have entered the market as a consequence of, *inter alia*, shares held by underwriters for the IPO, insiders that sold their shares after expiration of a lockup period, or options granted as incentives to Polished executives and officers.

4

should not appoint a Lead Plaintiff who lacks standing to pursue significant claims in this litigation. *See Quintus*, 201 F.R.D. at 489 (finding movant "can be eliminated quickly" because it "lacks standing to bring any [S]ection 11 [Securities Act] claims on behalf of the class" and "creating a sub-class of plaintiffs who [have standing on those claims] . . . is unnecessary as long as a lead plaintiff . . . who [has standing for both the Securities Act and Exchange Act claims] is selected"). Unlike Eden Alpha, Gold purchased the majority of his Polished shares **before** the SPO (*see* Dkt. No. 11-4 at *2) and thus has standing to pursue **both** the Exchange Act **and** Securities Act claims in this Action, making it unnecessary to burden the Class with Eden Alpha's standing issues.

**B.      Eden Alpha's status as a hedge fund that uses complex trading strategies makes it atypical of the Class at large**

Eden Alpha is further atypical of the Class, inadequate to protect the Class's interests, and subject to a unique defense for the additional reason that it is a hedge fund that employs more complex trading strategies than the average investor. Not only does this render Eden Alpha atypical of the Class and inadequate to prosecute its claims, it also supplies Defendants with ample ammunition to attack Eden Alpha's purported reliance on the accuracy of Polished's share price and Defendants' alleged misstatements. Courts routinely decline to appoint such investors as lead plaintiffs in PSLRA actions. *See, e.g.*, *MicroStrategy*, 110 F. Supp. 2d at 437 (refusing to appoint "Wolverine Trading [because it is] an atypical investor that engages in transactions far beyond the scope of what a typical investor contemplates"); *Bank One*, 96 F. Supp. 2d at 784 (refusing to appoint hedge fund because of its complex trading strategy and because it "stand[s] . . . in the place of whatever number of investors are participants in its managed fund"). Indeed, courts in the Second Circuit have disqualified lead plaintiff movants under the PSLRA because "[t]he question whether [the lead plaintiff movant]'s trading practice compromise [its] claims and [its] adequacy

5

as a class representative is sure to arise in the litigation" and "[t]hat potential to distract militates against [its] appointment." *DraftKings*, 2021 WL 5282006, at *10; *see also, e.g.*, *Applestein v. Medivation Inc*, No. C 10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (finding it "sufficient . . . to raise serious concerns about [movant's] typicality and about [its] susceptibility to the defense that [it] was trading in response to information other than the alleged misstatements and omissions made by [Defendants]").

As discussed more fully in Gold's opposition brief, Eden Alpha describes itself as a "hedge fund" that employs an "unconventional approach"; that "invest[s] in . . . businesses that trade below their value" and "increase their value regardless of the movements in the stock market";  and that "invest[s] in special situations[.]" Dkt. No. 13 at 13-14.  Particularly, Eden Alpha's touted trading strategies raise the prospect that it believed that the share price of Polished was "undervalued", thereby undercutting the fraud on the market presumption of *Basic, Inc. v. Levinson*:

> ***Any*** showing that severs the link between the alleged misrepresentation and . . . [plaintiff's] decision to trade at a fair market price[] will be sufficient to rebut the presumption of reliance . . . . [A] plaintiff who . . . believed that [the company's] stock was artificially underpriced, but sold his shares nevertheless because of other unrelated concerns . . . ***could not be said to have relied on the integrity of [the company's share] price***[.]

485 U.S. at 248-49 (emphases added).  Accordingly, if appointed Lead Plaintiff, Defendants will likely challenge Eden Alpha's presumed reliance on the Defendants' alleged misstatements—arguments that Eden Alpha will be forced to defend at considerable expense to its ability to litigate the Class's claims.  Gold respectfully submits that the Class deserves better than a representative encumbered with such unique issues.

## II.    ALTERNATIVELY, GOLD SHOULD BE APPOINTED CO-LEAD PLAINTIFF WITH EDEN ALPHA TO PROTECT THE INTERESTS OF THE CLASS

In light of all the foregoing issues, if, *arguendo*, the Court were to appoint Eden Alpha as Lead Plaintiff, Gold respectfully submits that he should be appointed as a Co-Lead Plaintiff alongside Eden Alpha to ensure that the interests of all Class members are adequately represented. Courts in the Second Circuit and around the country routinely use a Co-Lead Plaintiff structure to buttress the overall representation of class members. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004) (finding "a co-lead structure . . . provid[es] greater stability . . . should . . . either co-lead plaintiff . . . not adequately represent the class"); *Malasky v. IAC/Interactivecorp*, No. 04 CIV. 7447 (RJH), 2004 WL 2980085, at \*4 (S.D.N.Y. Dec. 21, 2004), *on reconsideration in part*, No. 04 CIV. 7447 (RJH), 2005 WL 549548 (S.D.N.Y. Mar. 7, 2005) (finding co-lead plaintiff "structure provides flexibility and stability to the class if presented with . . . [a] co-lead plaintiff [that] fails to address certain interests within the class . . . or compromises the class in some fashion").

If Eden Alpha is appointed Lead Plaintiff, the Class will need additional representation to pursue Section 11 claims, given Eden Alpha's lack of standing, and to ensure that this Action can proceed in the non-speculative event that Defendants ultimately succeed in rebutting the *Basic* presumption of reliance with respect to Eden Alpha. Protecting this Action's Securities Act claims, of which Eden Alpha has none, is especially critical because those claims do not require proof of reliance or scienter, thereby increasing the Class's chances of obtaining a significant recovery. *See Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004) (noting that "[n]either Section 11 nor Section 12(a)(2) [of the Securities Act] requires that plaintiffs allege the scienter or reliance elements of a fraud cause of action"); *In re Proshares Tr. Sec. Litig.*, 889 F. Supp. 2d 644, 652 (S.D.N.Y. 2012) ("Section 11 does not require pleading or proof that a defendant acted with

7

intent to defraud or even knew that misrepresentations or omissions had been made."). Accordingly, if Eden Alpha is appointed Lead Plaintiff, the Class will clearly benefit from a Co-Lead Plaintiff structure, with Gold appointed alongside Eden Alpha as Co-Lead Plaintiff, because Gold, unlike Eden Alpha, has standing to prosecute this Action's Exchange Act *and* Securities Act claims, and Gold does not have a self-professed unconventional or complex trading strategy that would call into question whether he relied on Defendants' alleged misstatements or omissions or the accuracy of the Company's stock price.

## CONCLUSION

For the foregoing reasons, Gold respectfully requests that the Court issue an Order: (1) appointing Gold as Lead Plaintiff for the Class; and (2) approving Gold's selection of Pomerantz as Lead Counsel for the Class.

Dated: January 20, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Lesley F. Portnoy
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
lportnoy@pomlaw.com

*Counsel for Ari Gold and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Ari Gold*

9